UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- X
In re:

GABRIEL A. SAN ROMAN and
MICHELE D. SAN ROMAN

                        Debtors.

---------------------------------------------------------- X

Case No. 18-77977 (REG)

Chapter 11

## DEBTORS' THIRD AMENDED PLAN OF REORGANIZATION

### ARTICLE I
### SUMMARY

This Third Amended Plan of Reorganization (the "Plan") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") proposes to pay creditors of Gabriel A. San Roman and Michele D. San Roman (the "Debtors") from the post-confirmation income of the Debtors.

This Plan provides for one (3) classes of secured creditors, one (1) class of general unsecured creditors, and one (1) class of the Debtor's interest in property. Unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately one-hundred ($1.00) cents on the dollar. This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to ARTICLE III through ARTICLE VI of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney if you have one. If you do not have an attorney, you may wish to consult one.**

### ARTICLE II
### CLASSIFICATION OF CLAIMS AND INTERESTS

    2.01    Class 1:    Chrysler Capital

    2.02    Class 2:    Wells Fargo Bank, N.A. – 1st Mortgage

    2.03    Class 3:    Wells Fargo Bank, N.A. – 2nd Mortgage

    2.04    Class 4:    General Unsecured Claims

    2.05    Class 5:    Interests in Property

# ARTICLE III
# TREATMENT OF ADMINISTRATIVE EXPENSE
# CLAIMS, UST FEES, AND PRIORITY TAX CLAIMS

3.01    Unclassified Claims.  Under Bankruptcy Code §1123(a)(1), administrative expense claims and priority tax claims are not in classes.

3.02    Administrative Expense Claims.  Each holder of an administrative expense claim allowed under Bankruptcy Code §503 will be paid in full on the effective date of the Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

3.03    Secured Tax Claims. Each holder of a secured tax claim will be paid in full, plus statutory interest, pursuant to Bankruptcy Code §1129(a)(9)(D), in forty-five (45) equal monthly installments commencing on the Effective Date, provided the term shall not end later than 5 years from the Petition Date.

3.04    Priority Tax Claims.  Each holder of a priority tax claim will be paid in full, plus statutory interest, pursuant to Bankruptcy Code §1129(a)(9)(C), in forty-five (45) equal monthly installments commencing on the Effective Date, provided the term shall not end later than 5 years from the Petition Date.

3.05    United States Trustee Fees.  All fees required to be paid pursuant to 28 U.S.C. §1930(a)(6) will accrue and be timely paid until the case is closed, dismissed, or converted to a case under another chapter of the Bankruptcy Code.

# ARTICLE IV
# TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.01    Claims and Interests shall be treated as follows under the Plan:

| **Class Number** | **Description** | **Impairment** | **Treatment** |
| --- | --- | --- | --- |
| 1 | Chrysler Capital | Unimpaired | Claim Nos. 1 and 2.  Maintain its liens on two (2) separate vehicles to the extent of their debt pursuant to the terms of the underlying promissory note, respectively.  Paid in full pursuant to the terms of the underlying promissory notes, respectively. |
| 2 | Wells Fargo Bank, N.A. – 1st Mortgage | Impaired | Claim No. 10 - Claim Amount $2,411,435.57, Reinstatement Amount $1,142,125.85.  To the extent of the ongoing obligations, Debtor will continue making payments to the claim holder pursuant to the terms of the underlying promissory. To the extent of |

| | | | |
|---|---|---|---|
| | | | the arrears, upon the Effective Date, and on the first day of each and every month following month after the Effective Date through and including the maturity date of the underlying promissory note, Debtor will make monthly payments to the claim holder equal to the pre-petition arrearage divided the number of months between the Effective Date and maturity date of the promissory note. Terms of a stipulation, if any, between the Debtors and the creditor may be incorporated herein by reference upon approval by the Court. |
| 3 | Wells Fargo Bank, N.A. – 2nd Mortgage | Impaired | Claim No. 11 - Claim Amount $2,411,435.57, Reinstatement Amount $337,234.14. To the extent of the ongoing obligations, Debtor will continue making payments to the claim holder pursuant to the terms of the underlying promissory note. To the extent of the arrears, upon the Effective Date, and on the first day of each and every month following month after the Effective Date through and including the maturity date of the underlying promissory note, Debtor will make monthly payments to the claim holder equal to the pre-petition arrearage divided the number of months between the Effective Date and maturity date of the promissory note. Terms of a stipulation, if any, between the Debtors and the creditor may be incorporated herein by reference upon approval by the Court. |

| 4 | General Unsecured Claims | Impaired | Estimated Total Allowed Claims of $879,645.88. Receive a distribution of one-hundred (100%) percent of their allowed claim, to be distributed as follows: (A) (1) ten (10%) percent on the Effective Date; and (2) two and on-half (2.5%) percent every three (3) months thereafter for a period of nine (9) years; and (B) pledge fifty (50%) of the net amount of any bonus received by the Debtor during the term of the Plan, which amount shall be paid promptly after receipt in further reduction of Debtor's allowed claims by being applied first to the last scheduled Plan payments. |
| --- | --- | --- | --- |
| 5 | Interests in Property | Unimpaired | Debtors shall retain its interest in all property. |

## ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01  <u>Disputed Claim</u>.  A disputed claim is a claim that has not been allowed or disallowed and, as to which, either: (ii) a proof of claim has not been filed or deemed filed and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed and the Debtor has scheduled such claim as disputed, contingent or unliquidated.

5.02  <u>Delay of Distribution of a Disputed Claim</u>.  No distribution will be made on account of a disputed claim unless such claim is allowed.

5.03  <u>Settlement of Disputed Claims</u>.  The Debtor will have the power and authority to settle and compromise a disputed claim with Court approval in compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## ARTICLE VI
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01    Assumed Executory Contracts and Unexpired Leases.

(a)    The Debtor assumes the following executory contracts and unexpired leases, effective upon the effective date of the Plan as provided for in ARTICLE VII:

i.    [INTENTIONALLY LEFT BLANK]

(b)    The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.01(a), above, or before the date of the order confirming this Plan, upon the effective date of Plan.  A proof of claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than ten (10) days after the date of the order confirming this Plan.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

Payments and distributions under the Plan will be funded by the Debtors' post-petition operations.  It is estimated that the Debtors needs $51,500 for administrative expenses, $8,502 as initial cure payment, and $87,965 as an initial general unsecured distribution upon confirmation of the Plan, plus an additional $8,502 per month for cure payments, and $21,991 per quarter for general unsecured distributions.

Gabriel A. San Roman is a medical doctor who currently works for Northwell Health and practices in the fields of reproductive endocrinology and infertility. Gabriel A. San Roman is currently employed under an employment contract which has approximately seven and one-half (7.5) years remaining.  Through his employment, Gabriel A. San Roman receives net monthly income of approximately $58,173.63, which the Debtors believe will provide sufficient income to fund the Plan. Additionally, Gabriel A. San Roman may be entitled to receive an annual bonus based on his performance.  In March 2019, Gabriel A. San Roman received his 2018 annual bonus, which netted the Debtors $80,839.00, which amounts are behind held to fund the initial Plan payment.

# ARTICLE VIII
# GENERAL PROVISIONS

8.01    Definitions and Rules of Construction.  The definitions and rules of construction set forth in Bankruptcy Code §§101 and 102 shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan, as supplemented by the terms defined herein.

8.02    Effective Date of the Plan.  The effective date of this Plan is the eleventh (11th) business day following the date of the entry of the order confirming this Plan.  However, if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

8.03    Minimum GUC Distributions.  The Debtor shall only make initial and annual distributions of general unsecured claims whose *pro rata* distribution exceeds $25.00.

8.04    Rounding of GUC Distributions.  The Debtor shall make initial and annual *pro rata* distributions to general unsecured claims in One and 00/100 ($1.00) Dollar Increments.  Any initial or annual *pro rata* distribution under the Plan shall be rounded down to the nearest whole dollar.

8.05    Unclaimed Funds.  Any distributions made by the Debtors that remain unclaimed, undeposited, uncashed or otherwise unnegotiated after ninety (90) days of the date of the distribution shall be deemed abandoned by the holder of such claim and shall revert to the Debtors.

8.06    Severability. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.07    Binding Effect. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.08    Captions. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.09    Controlling Effect. Unless a rule of law or procedure is supplied by federal law, including the Bankruptcy Code or the Bankruptcy Rules, the laws of the State of New York govern this Plan and any agreements, documents, and instruments executed in connection with this Plan.

8.10    Corporate Governance. The debtor shall be prohibited until completion of all plan payments from issuing non-voting equity securities, transfer all or a substantial part of property of the estate to one or more entities nor manage or consolidate the debtor corporation.

8.11    Vesting.  All assets of the Debtor shall re-vest in the Debtor upon confirmation.

# ARTICLE IX
# DISCHARGE

9.01   <u>Discharge.</u> Upon completion of all payments under the Plan, the Court shall grant the Debtors a discharge of all debts provided for in the Plan pursuant to Bankruptcy Code §1141(d)(5)(A).

# ARTICLE X
# RETENTION OF JURISDICTION

10.01   The Court shall retain jurisdiction of these proceedings following the Confirmation Date for the following purposes:

(a)   to hear and determine any objections to the allowance of Claims;

(b)   to determine any and all applications for compensation for professional persons and similar fees;

(c)   to determine any and all pending applications for the rejection or assumption of executory contracts, for rejection or assumption and assignment of same where Debtor is a party or may be liable, and to hear, determine, and liquidate (if applicable), any and all resulting claims;

(d)   to determine any and all applications, adversary proceedings, and contested or litigated matters properly before the Court and pending on the Confirmation Date;

(e)   to modify the Plan pursuant to Bankruptcy Code §1127 to remedy any defect or omission or reconcile any inconsistency in the Confirmation Order to the extent authorized by the Bankruptcy Code;

(f)   to hear and determined all controversies, suits and disputes, if any, as may arise in connection with the interpretation or enforcement or implementation of the Plan;

(g)   to hear and determine all controversies, suits and disputes, if any, as may arise

(h)   with regard to orders of this Court in the chapter 11 case entered on or before the Confirmation Date;

(i)   to adjudicate all controversies concerning the classification of any claim or equity interest;

(j)   to liquidate damages in connection with any disputed, contingent or unliquidated Claims;

(k)   to adjudicate all claims to a security or ownership interest in any property of the Debtor or in any proceeds thereof;

(l)   to adjudicate all claims or controversies arising out of any purchases, sales or contracts made or undertaken by the Debtor during the pendency of the chapter 11 case;

(m)   to recover all assets and properties of the Debtor wherever located, including the prosecution and adjudication of all causes of action available to the Debtor as of the Confirmation Date;

(n)   to determine all questions and disputes regarding recovery of and entitlement to the Debtor's assets and determine all Claims and disputes between the Debtor and any other entity, whether or not subject to an action pending as of the Confirmation Date;

(o)   to enter any order, including injunctions, necessary to enforce the title, rights and powers of the Debtor and to impose such limitations, restrictions, terms and conditions on such title, rights and powers as the Court may deem necessary or appropriate;

(p)   to enter an order of consummation or final decree concluding and terminating the chapter 11 case; and

(q)   to make such orders as shall be necessary or appropriate to carry out the provisions of the Plan, including but not limited to orders interpreting, clarifying or enforcing the provisions thereof.

# ARTICLE XI
# EVENT OF DEFAULT

11.01   Only the occurrence of either of the following shall constitute a default by the Debtor under the Plan:

(a) The failure of the Debtor to make any payment when due under the Plan, which failure shall have been uncured for a period of thirty (30) days after the Debtor's receipt of written notice thereof unless such payment has been extended in accordance with the provisions of the Plan; and

(b) The failure of the Debtor to comply with any of the specific covenants contained in the Plan, except for default in payment as provided in paragraph 11.01(b) above, which failure shall remain uncured for a period of thirty (30) days after the Debtor has received written notice of such failure.

Dated: August _14_, 2019

**GABRIEL SAN ROMAN**
Debtor and Debtor-In-Possession

By:   s/ *Gabriel San Roman*
      Gabriel San Roman

**MICHELE SAN ROMAN**
Debtor and Debtor-In-Possession

By:   *s/ Michele San Roman*
      Michele San Roman

**MACCO LAW GROUP, LLP**
Attorneys for the Debtor

By:   *s/ Cooper J Macco*
      Michael J. Macco
      Cooper J Macco
      2950 Express Drive South, Suite 109
      Islandia, New York 11749
      (631) 549-7900